Braddock J. Huesman, CNMI Bar No. F0367
**LAW OFFICE OF BRADDOCK J. HUESMAN, LLC**
Suite 2-C, Sablan Building
Beach Road, Chalan Kanoa
PO Box 501916
Saipan, MP 96950
Tel: (670) 234-9005
Fax: (670) 235-9007
braddock@huesmanfirm.com

*Attorney for August Healthcare Group LLC d/b/a St. Michael's Medical Response*

F I L E D
Clerk
District Court

APR 27 2012

For The Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| **AUGUST HEALTHCARE GROUP, LLC d/b/a SAINT MICHAEL'S MEDICAL RESPONSE,**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**THOMAS M. MANGLONA, individually and in his personal capacity as Fire Chief of the Department of Public Safety, MICHAEL MANIBUSAN TAKAI, JOHN BENEDICT TAISAKAN PELISAMEN, MARIANAS GLOBAL VENTURES, LLC d/b/a PRIORITY CARE, JOAQUIN CAMACHO MANGLONA, and JOHN DOES 1-10.**<br><br>**Defendants.** | **CIVIL CASE NO. CV 12-0008**<br><br>**MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

## MOTION

Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, August Health Care d/b/a St. Michael's Medical Response ("St. Michael's") hereby moves (the "Motion") this Court for a preliminary injunction in this action to continue until the final

determination, restraining: (1) Mr. Pelisamen from working for Priority Care; (2) Mr. Pelisamen from soliciting, offering kickbacks, bribes or gratuities, however described, to St. Michael's customers; (3) Mr. Takai from working for Priority Care; (4) Mr. Takai from soliciting, offering kickbacks, bribes or gratuities, however described, to St. Michael's customers St. Michael's customers; (5) Priority Care from soliciting, offering kickbacks, bribes or gratuities, however described, to St. Michael's customers St. Michael's patients; (6) Priority Care from transporting and collecting fees from current and former St. Michael's customers; and (7) Mr. Jack C. Manglona from contacting or soliciting St. Michael's current customers. This Motion is based on St. Michael's Verified Complaint for Compensatory Damages, Punitive Damages, Application for Injunctive Relief, and Demand for Jury Trial, attached hereto.

## MEMORANDUM

Joseph C. Santos formed St. Michael's, which was then called Vespers Health Group LLC, in 2007. At all times relevant hereto, Vespers, and its successors in interest, August Health Care Group LLC, doing business as St. Michael's, were fully licensed, certified, and in compliance with all current CNMI laws and regulations regarding the operation of an ambulance service. St. Michael's was the CNMI's first, and until recently only, private ambulance company. St. Michael's makes its money by transporting patients to and from medical treatment facilities in the CNMI.

In 2007, St. Michael's approached the Department of Public Safety's Fire Division's, EMS Coordinator Tom Manglona, with an offer to quit his job and become an investor or member in the new ambulance company. Mr. Manglona refused to become a member or investor of St. Michael's, and instead of joining St. Michael's, he set

up a consulting firm, TL Professional Services, in an effort to sell training and consulting services to St. Michael's.

In May of 2008, St. Michaels, with the help of Mr. Manglona, attempted to secure certification from the Department to operate a private ambulance company. The Department's then Acting Commissioner, Clyde K. Norita, however, refused to certify St. Michael's because the Department had "no authority" to regulate private ambulance companies. Around this time, St. Michael's and Mr. Manglona had a disagreement regarding St. Michael's hiring practices.

Shortly thereafter Rep. Ray Yumul introduced HB 16-111, a bill to regulate private ambulances. HB 16-111, in its findings, acknowledges that there are no statutes that provide for private ambulance regulation. St. Michael's opposed the legislation, as it was a crude "cut and paste" from only a partial section of Arizona's comprehensive law. Rep. Yumul later confirmed that Mr. Manglona was instrumental in crafting HB 16-111. Mr. Manglona's participation in the crafting of HB 16-111 put him on notice, if he was not already, that there were no statutes or regulations regarding private ambulance companies in the CNMI.

As it was clear there were no regulations or statutes that dealt with private ambulance companies, St. Michael's applied for and received its Medicare service provider number known as the Provider Transaction Access Number ("PTAN") and transported its first patient in June of 2008.

In April of 2009, Joe Santos, the owner of St. Michael's, attended a meeting sponsored by then Representative, now Senator, Ralph Torres regarding HB 16-111. The meeting quickly degenerated into an argument between Mr. Manglona and Mr. Santos regarding the Division's ability to regulate St. Michael's. The meeting came

to an end, however, when then Commissioner Tudela announced that he was going to "use PL 11-56 to shut [St. Michael's] down." There were six witnesses to this meeting.

In March of 2009, St. Michaels needed to renew the registration of an existing ambulance and register a brand new ambulance. The Department, in violation of St. Michael's rights, absolutely refused to register the ambulances. St. Michael's staff spoke with Juana C. Leon Guerrero ("Ms. Guerrero") and she informed the staff that she could not certify the ambulances under strict instructions from the Commissioner of Public Safety, Santiago Tudela. Ms. Guerrero also informed St. Michael's staff that the reason Commissioner Tudela would not allow registration was that: "Tom Manglona said that there is something wrong with your license." St. Michael's staff, after being told by Ms. Guerrero that the commissioner instructed her to not register her vehicles, went directly to the Commissioners office, and the Commissioner himself, Santiago Tudela, told St. Michael's that "Tom Manglona said there was something wrong with your ambulances." This was a materially false statement made by Mr. Manglona and he knew it was false at the time he made it.

St. Michael's spoke with the Governor's office, which immediately asked the Department the reason for the refusal. Almost immediately after the Governor's intervention, St. Michael's received registration for both vehicles. Upon information and belief, Mr. Manglona was instrumental in prompting the Department's Division of Motor Vehicles to wrongfully refuse to register the ambulances.

On June 4, 2009, Ms. Guerrero sent a letter, **Exhibit "A,"** attached to the Complaint, claiming that the ambulances were only registered as vans and "not authorized as emergency response vehicles." Upon information and belief, government ambulances are only registered as vans. *See* the Department's ambulance registration

attached as **Exhibit "B,"** to the Complaint. Upon information and belief, Mr. Manglona was instrumental in convincing Commissioner Tudela to illegally attempt to restrict St. Michael's vehicle registration.

On August 24, 2009, Commissioner Tudela sent, attached to the Complaint as **Exhibit "C,"** a letter to Acting Secretary Untalan at the Department of Public Health. The letter claims that the Department's Fire Division is the "sole provider" of emergency medial services in the Commonwealth and that St. Michael's was not licensed or certified in the CNMI because the Department had not certified them. There are no statutes that authorize the Department's Fire Division as the "sole provider" of emergency medical services in the Commonwealth. There are no regulations that authorize the Department's Fire Division as the "sole provider" of emergency medical services in the Commonwealth. Further, **Exhibit "C"** fails to cite to any regulations giving the Department any authority to license ambulances.

Beginning in April of 2010, St. Michael's received notice that it was under investigation by Palmetto GBA, the Medicare contractor responsible for paying St. Michael's claims. By November 10, 2010, St. Michael's received a letter from Palmetto, attached to the Complaint as **Exhibit "D,"** indicating that St. Michael's PTAN number had been revoked because St. Michael's was "not licensed in [the] Commonwealth of the Northern Mariana Islands." St. Michael's inquiries into Palmetto's investigation indicated that "a CNMI official" had alerted Palmetto to the alleged "fact" that St. Michael's was not licensed in the CNMI. Upon information and belief, that CNMI official was Tom Manglona.

Losing the Medicare billing number should have been a death sentence for St. Michael's, and almost was. By the end of April of 2011, St. Michael's was still without

its Medicare billing number, but it was able to confirm that the letter that initially started the Palmetto investigation was the August 20, 2009 letter from Commissioner Tudela, attached to the Complaint as **Exhibit "C."**

On May 19, 2011, St. Michael's attempted to persuade Commissioner Mafnas that it was operating correctly under CNMI law. Commissioner Mafnas referred the matter to his Fire Chief, Tom Manglona, and Mr. Manglona, in a memorandum attached to the Complaint as **Exhibit "E,"** reiterated his baseless attacks on St. Michael's while "adopting" the Department's previously stated positions. Upon information and belief, Mr. Manglona initially crafted the Department's illegal and discriminatory positions that he later formally adopted. At the very least, however, **Exhibit "E"** demonstrates Mr. Manglona's adoption of the efforts to harass and harm St. Michael's. In **Exhibit "E"**, Mr. Manglona: complained that the Division had not trained St. Michael's staff; complained that St. Michael's vehicles were not registered as emergency response or ambulance providers; and that the Fire Code gave the Division "enforcement authority" of maintaining an emergency medical service system.

There is no statutory requirement that the Department's Fire Division train private or public emergency medical staff. There is no regulatory requirement that the Department's Fire Division train private or public emergency medical staff. The Fire Code does not give enforcement authority to the Division. The Fire Code, under "powers of the [Division]" (section 7321) does not include the word "enforcement." There is no statutory requirement that the Department's Fire Division train private emergency medical staff. There is no regulatory requirement that the Department's Fire Division train public emergency medical staff.

St. Michael's ambulances are not registered as emergency response or ambulance providers just as the Department's ambulances are not registered as emergency response or ambulance providers just as Priority Care's ambulances are not registered as emergency response or ambulance providers.

Mr. Manglona's baseless attacks supplemented by the authority of the Department notwithstanding, on June of 2011, St. Michael's was able to demonstrate that there were, in fact, no laws or regulations pertaining to private ambulances and that St. Michael's was in full compliance with all existing CNMI laws and regulations.

### **Mr. Manglona's and Mr. Jack C. Manglona's Relationship**

Mr. Jack C. Manglona is one of the members of Marianas Global Ventures, LLC, d/b/a Priority Care and Mr. Jack C. Manglona and Mr. Manglona are first cousins. Moreover, Mr. Jack C. Manglona and Mr. Manglona, were sitting together at a rosary on Saipan and Mr. Jack C. Manglona was overheard to say: "we are going to run St. Michael's out of business and then start our own ambulance company." Upon information and belief, Mr. Jack C. Manglona was referring to himself, Mr. Manglona, Mr. Takai, Mr. Pelisamen, and John Does as the people who were going to "run St. Michael's out of business."

### **Mr. Manglona, Mr. Jack C. Manglona and Priority Care**

On March 9, 2010, only one month before St. Michael's received notice that it was under investigation by Palmetto due to the false allegations spearheaded by Mr. Manglona, Mr. Jack C. Manglona established Saint Jude Supplies and Services, LLC ("St. Jude"). St. Jude eventually became Priority Care, St. Michael's only competitor. As a further indication that Mr. Jack C. Manglona, Priority Care, and Mr. Manglona are conspiring, Mr. Manglona attempted to secure services on behalf, and for the benefit of,

Priority Care. Upon information and belief, Mr. Manglona has acted as an agent for Priority Care.

### Mr. Jack C. Manglona, Priority Care, and Messrs. Takai and Pelisamen's actions against St. Michael's

On July 5, 2009, St. Michael's hired Mr. Takai and Mr. Pelisamen. St. Michael's hired Mr. Takai as an Emergency Medical Technician ("EMT") and as an Ambulance Attendant. St. Michael's hired Mr. Pelisamen as an Ambulance Operator. As part of their employment, Mr. Takai's and Mr. Pelisamen he had access to St. Michael's customer lists and client information, which included confidential medical records. The information Messrs. Takai and Pelisamen had access to included but was not limited to: patient information (address, medical condition, contact information, and insurance coverage); physician reports for the patients; and proprietary company procedures. In exchange for employment and access to the highly confidential information described above, Messrs. Takai and Pelisamen signed covenants not to compete and not to solicit agreements with St. Michael's. Mr. Pelisamen's contract is attached to the Complaint as **Exhibit "G."**

St. Michael's terminated Messrs. Takai and Pelisamen for falsifying hours worked. After Messrs. Takai and Pelisamen's termination, customers of St. Michael's informed St. Michael's that Messrs. Takai and Pelisamen had been soliciting St. Michael's customers to switch over to Priority Care once Priority Care began operations, which violated duties of loyalty owed to St. Michael's. Messrs. Takai and Pelisamen are now working for Priority Care, and soliciting customers for Priority Care by offering Medicare patients, among other things, beer and betel nut as "incentive" to switch companies, all in violation of their contract with St. Michael's.

Before they were terminated, and in keeping with their plan to steal customers from St. Michael's, Messrs. Takai and Pelisamen conspired with Mr. Jack C. Manglona and Priority care to illegally access St. Michael's computer database and copy patient information that included, but was not limited to client lists, Patient Signature Forms (the "Patient Signature") and Physician Certification Statement (the "Statements") (collectively the "Forms"). St. Michael's has been notified by health care workers that Priority Care and Messrs. Takai and Pelisamen have been using paperwork, which is identical to the Forms and that Priority Care's forms contain health care information that Priority Care, absent Messrs. Takai and Pelisamen's theft, could not, and should not, have had access to.

One of the current patients' daughter informed St. Michael's that Mr. Jack C. Manglona offered pigs for every family event (Novena, birthday, christening, etc.) going forward if the family would switch to Priority Care. But for Priority Care and Mr. Jack C. Manglona's illegal use of St. Michael's customer list, Priority Care and Mr. Jack C. Manglona would not be able to contact St. Michael's customers. St. Michaels has lost three long time customers to Priority Care: Frederico Manglona, a client for 1.5 years; Pedro Iginoef, a client for 2.5 years; and Concepcion Saures, a client for 2.5 years.

Messrs. Takai and Pelisamen, when they became employees at St. Michael's were provided a copy of the St. Michael's personnel handbook (the "Handbook"). Messrs. Takai and Pelisamen agreed to return the Handbook upon termination of their employment. The Handbook contains proprietary information regarding the business practices of St. Michaels. Messrs. Takai and Pelisamen have refused and continue to refuse to return the Handbook. Upon information and belief, Priority Care now has access to St. Michael's confidential Handbook.

## ARGUMENT & AUTHORITY

St. Michael's is entitled to injunctive relief as Priority Care, Messrs. Jack C. Manglona, Pelisamen, and Takai conspired to steal and improperly use St. Michael's customer list. Further, Messrs. Takai and Pelisamen owed common law duties of loyalty to St. Michael's as well as contractual duties that they breached. Preliminary injunctive relief is warranted in this case. "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009).

St. Michael's seeks injunctions against: (1) Mr. Pelisamen from working for Priority Care; (2) Mr. Pelisamen from soliciting, offering kickbacks, bribes or gratuities, however described, to St. Michael's customers; (3) Mr. Takai from working for Priority Care; (4) Mr. Takai from soliciting, offering kickbacks, bribes or gratuities, however described, to St. Michael's customers; (5) Priority Care from soliciting, offering kickbacks, bribes or gratuities, however described, to St. Michael's customers St. Michael's patients; (6) Priority Care from transporting and collecting fees from current and former St. Michael's customers; and (7) Mr. Jack C. Manglona from contacting or soliciting offering kickbacks, bribes or gratuities, however described, to St. Michael's customers

### A.  Likelihood of Success on the Merits

There is a strong likelihood of success in this case as the term "trade secret" is defined in the Restatement of Torts, Section 757, p. 5, as follows: "A trade secret may consist of any ... compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or

use it. It may be a ... list of customers." See also, Nims on Unfair Competition and Trade Marks (4th Ed.), page 403; Kaumagraph Co. v. Stampagraph Co., 138 N.E. 485, 487 (NY 1923). Thus, St. Michael's customer list and customer information, aside from being protected by federal law, is, and was, a trade secret. In fact, the St. Michael's customer and patient list s is so important to St. Michael's that it requires all employees to sign covenants not to compete and covenants not to solicit. See, VERIFIED COMPLAINT FOR COMPENSATORY DAMAGES, PUNITIVE DAMAGES, APPLICATION FOR INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL at pp. at ¶¶ 105-110. Even if St. Michael's did not require the covenants not to compete and not to solicit, Messrs. Takai and Pelisamen still owed St. Michael's a duty of loyalty. This is so because the Restatement (Second) of Agency dictates that an agent is subject to a duty not to compete with his principal concerning the subject matter of his agency. Restatement (Second) of Agency § 393 (1958).

Messrs. Takai and Pelisamen breached their duty of loyalty to St. Michael's when they actively used St. Michael's customer list to solicit customers for Priority Care while still employed by St. Michaels. See, VERIFIED COMPLAINT FOR COMPENSATORY DAMAGES, PUNITIVE DAMAGES, APPLICATION FOR INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL at pp. at ¶¶ 112-114. Additionally, Messrs. Takai and Pelisamen breached their contractual duties when they left the employment of St. Michael's, continued to solicit customers and began competing against St. Michael's. Id., at ¶¶ 112-115. The former employees are not the only bad actors however.

Mr. Jack C. Manglona and his company, Priority Care, are also currently using St. Michael's customer list to approach St. Michael's customers and offer them pigs and other incentives if they will use Priority Care's services. Id. at ¶¶ 114-117. But for Priority

Care's employment of Messrs. Pelisamen and Takai, Mr. Jack C. Manglona and Priority Care would not be able to use St. Michael's trade secret customer list to compete with St. Michael's. They would not be able to badger clients or offer pigs, beer and other incentives to damage St. Michael's business.

Importantly, if a trade secret is acquired through conduct that is itself a tortious or criminal invasion of the trade secret owner's rights, the acquisition ordinarily will be regarded as improper." Restatement (Third) of Unfair Competition § 43 cmt. c (1995); see also Restatement (First) of Torts § 759 cmt. c (1939) ("Among the means which are improper are theft, trespass, bribing or otherwise inducing employees or others to reveal the information in breach of duty . . . ."). Here, St. Michael's has established that defendants Mr. Jack C. Manglona and Priority Care would not have been given access to the customer data had they not conspired with former St. Michael's employees to obtain it.

### B. Likelihood of irreparable harm.

An intention to make imminent or continued use of a trade secret or to disclose it to a competitor will almost always certainly show irreparable harm." Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 92-93 (3rd Cir. 1992); North Atlantic Instruments, Inc. v. Haber, 188 F.3d 38, 49 (2nd Cir. 1999) (loss of trade secrets cannot be measured in money damages). Here, Defendants have stolen the customer and patient information that is the heart of its business; the damage is irreparable and must be stopped.

### C. Balance of equities is sharply in St. Michael's favor.

St. Michael's demonstrated that it is likely to suffer irreparable harm if injunctive relief is not awarded. St. Michael's requests that any injunction issued be focused on preventing Defendants from unlawfully using St. Michael's trade secrets to solicit its

customers. Such an order would not cause any significant hardship to Defendants, because it would essentially only require them to abide by existing law regarding the unauthorized use of another's trade secrets. Such a restriction would allow Defendants to lawfully compete with St. Michael's while protecting St. Michael's from the bad acts Defendants engaged in. In any event, whatever harm Defendants may suffer is slight when compared to the intangible harm St. Michael's suffers in losing its customers, built up with great effort over many years.

### D.     The Injunction is in the public interest.

This is a case about a conspiracy to destroy St. Michael's and set up a new business in its place. It involves not only government action, but also private theft of trade secrets. Defendants in this case do not have a right to steal customer lists from St. Michael's. Retirement Group v. Galante, 176 Cal. App. 4th 1226, 1237, (2009) ("An equally lengthy line of cases has consistently held former employees may not misappropriate the former employer's trade secrets to unfairly compete with the former employer"). It is in the public's interest to foster legitimate business competition, not competition through theft of trade secrets.

## CONCLUSION

For the foregoing reasons, St. Michael's requests that this Court order preliminary injunctive relief restraining: (1) Mr. Pelisamen from working for Priority Care; (2) Mr. Pelisamen from soliciting, offering kickbacks, bribes or gratuities, however described, to St. Michael's customers; (3) Mr. Takai from working for Priority Care; (4) Mr. Takai from soliciting, offering kickbacks, bribes or gratuities, however described, to St. Michael's customers St. Michael's customers; (5) Priority Care from soliciting, offering kickbacks, bribes or gratuities, however described, to St. Michael's customers St. Michael's patients;

(6) Priority Care from transporting and collecting fees from current and former St. Michael's customers; and (7) Mr. Jack C. Manglona from contacting or soliciting St. Michael's current customers.

Respectfully Submitted
Friday, April 27, 2012

**THE LAW OFFICE OF**
**BRADDOCK J. HUESMAN, LLC**

_____
Braddock J. Huesman (F0367)
The Sablan Building, Suite 2-C
Beach Road, Chalan Kanoa
P.O. Box 501916
Saipan, MP  96950
Telephone:  (670) 234-9005
Facsimile:   (670) 235-9007
Email: braddock@huesmanfirm.com