FILED
Clerk
District Court

NOV 21 2012

for the Northern Mariana Islands
By:_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| AUGUST HEALTHCARE GROUP, LLC *dba* SAINT MICHAEL'S MEDICAL RESPONSE,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS M. MANGLONA, individually and in his personal capacity as Fire Chief of the Department of Public Safety, MICHAEL MANIBUSAN TAKAI, JOHN BENEDICT TAISAKAN PELISAMEN, MARIANAS GLOBAL VENTURES, LLC *dba* PRIORITY CARE, JOAQUIN CAMACHO MANGLONA, and JOHN DOES 1-10,<br><br>Defendants. | Case 1:12-CV-00008<br><br>**MEMORANDUM OPINION AND ORDER GRANTING IN PART and DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

## I. INTRODUCTION

August Healthcare Group, LLC *dba* St. Michael's Medical Response ("St. Michael's") brings this action against Thomas M. Manglona ("Tom"), Joaquin C. Manglona ("Jack"), Marianas Global Ventures, LLC *dba* Priority Care ("Priority Care"), and two former St. Michael's employees, John T. Pelisamen and Michael M. Takai, for alleged violations of its civil rights under 42 U.S.C. § 1983 and various state tort and contract claims. (First Amended Complaint, ECF No. 26 at 1–2.) St. Michael's alleges that Tom conspired with his cousin, Jack, to illegally compete with St. Michael's patient transportation services. (*Id.*)

Presently before the Court is Priority Care Defendants' Motion to Dismiss First Amended Complaint. (ECF No. 35, hereafter, "Motion.") After considering the relevant filings, the evidence

1

presented, and the oral arguments presented by counsel for the parties on November 15, 2012, the Court finds that the allegation of conspiracy under 42 U.S.C. § 1983 as to Tom Manglona, Jack Manglona and Priority Care is sufficient to withstand the Motion. However, St. Michael's has failed to allege a sufficient nexus tying Defendants Pelisamen and Takai to the conspiracy and therefore, the constitutional claims. Accordingly, Defendants Pelisamen and Takai will be dismissed from the First Amended Complaint without prejudice.

## II. BACKGROUND

In a First Amended Complaint filed on July 24, 2012 (hereafter, "FAC"), St. Michael's alleges that Tom conspired with his cousin, Jack, to illegally bring down St. Michael's in order to establish his own competing patient transportation services or ambulance company called Priority Care. (Id. ¶ 2.) Jack is a member and registered agent of Priority Care, a limited liability company. (Id. ¶¶ 7, 96.) Tom violated St. Michael's rights by exceeding his statutory and regulatory authority as the Emergency Medical Services ("EMS") Coordinator, Acting Fire Chief, and Fire Chief of the Department of Public Safety ("DPS") Fire Division of the Commonwealth of the Northern Mariana Islands ("CNMI") by (1) interfering with St. Michael's business licenses; (2) providing materially false information regarding CNMI statutes and regulations to companies overseeing St. Michael's Medicare compliance; (3) requiring CNMI certifications that did not and still do not exist; and (4) treating other private ambulance companies and government ambulances differently. (FAC at 2.) The remaining defendants conspired with Tom to harm St. Michael's business by (1) violating their contractual agreements not to compete; (2) violating their contractual agreements not to solicit; (3) interfering with St. Michael's contracts; (4) stealing proprietary information; and (5) stealing

2

confidential patient medical records. (*Id.* ¶ 2.)

On the basis of the allegations outlined above, Plaintiff brings eleven causes of action against Defendants. The first eight causes of action allege direct constitutional violations against Tom Manglona and conspiracy to violate those rights against all Defendants pursuant to 42 § 1983: (1) Violation of Due Process – Licenses; (2) Conspiracy to Deprive St. Michael's of Due Process – Licenses; (3) Violation of Due Process – Provider Transaction Access Number ("PTAN"); (4) Conspiracy to Deprive St. Michael's of Due Process – PTAN; (5) Violation of Due Process – Malicious Prosecution; (6) Conspiracy to Deprive St. Michael's of Due Process – Malicious Prosecution; (7) Violation of Equal Protection; and (8) Conspiracy to Violate St. Michael's Guarantee of Equal Protection. The remaining causes of action are: (9) Breach of Contract against Takai and Pelisamen; (10) Tortious Interference with Existing Contract against Priority Care; and (11) Conspiracy and Concert of Action for Tortious Interference against all Defendants except Tom.

St. Michael's also repeats its request for a preliminary injunction restricting Defendants' actions.[1] (FAC ¶¶ 202–210.) On October 12, 2012, the Court issued a Memorandum Opinion and Order Denying Plaintiff's Motion for Preliminary Injunction. (ECF No. 44.) Therefore, preliminary injunction is not at issue in this motion.

///

//

---

[1] St. Michael's requests an order to continue until the final determination of the case, restraining: (1) Tom from investigating and harassing St. Michael's business and business relationships; (2) Pelisamen from working for Priority Care; (3) Pelisamen from soliciting St. Michael's customers; (4) Takai from working for Priority Care; (5) Takai from soliciting St. Michael's customers; (6) Priority Care from soliciting St. Michael's patients; (7) Priority Care from transporting and collecting fees from current and former St. Michael's customers; (8) Jack from contacting or soliciting St. Michael's current customers; and (9) Jack from offering kickbacks, bribes or gratuities, however described, to current and former customers of St. Michael's.

## III. JURISDICTION

This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the case in controversy involves federal questions, and supplemental jurisdiction over the state claims under 28 U.S.C. § 1367.

## IV. STANDARDS

### A. RULE 12(B)(1) JURISDICTION

On a Rule 12(b)(1) motion to dismiss, the court presumes it lacks subject matter jurisdiction until the plaintiff can prove otherwise. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [the court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."); *see also Thornhill Publ'g v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir.1979) ("[P]laintiff will have the burden of proof that jurisdiction does in fact exist").

### B. RULE 12(B)(6) FAILURE TO STATE A CLAIM

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Notwithstanding this deference, the court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Moreover, it is improper for a court to assume "the

[plaintiff] can prove facts that [he or she] has not alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## V. DISCUSSION

### A. SECTION 1985 CONSPIRACY

Defendants initially argued in the Motion that the FAC should be dismissed because St. Michael's failed to allege all the elements of a conspiracy under § 1985.[2] (Mot. at 2–3.) Both § 1983 and § 1985(3) do not create independent substantive rights; they are procedural statutes which provide a remedy for deprivation of existing rights. *Great Am. Fed. Sav. & Loan v. Novetny*, 442 U.S. 366, 372, 376 (1979); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617-618 (1979). A § 1985 claim is grounded in the Thirteenth Amendment, while a § 1983 claim is grounded in the Fourth or Fourteenth Amendments. *Id.*

St. Michael's contends, and Defendants later conceded at the November 15, 2012 hearing (the "Hearing"), that St. Michael's never made a § 1985 claim and therefore that section is irrelevant to the discussion here. A review of the FAC reveals that St. Michael's § 1983 claims are grounded in the Fourteenth Amendment rather than the Thirteenth Amendment. Accordingly, the Court continues the discussion with respect to the § 1983 conspiracy only.

---

[2] To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *Griffin v. Breckinbridge*, 403 U.S. 88, 102–3 (1971).

5

## B. SECTION 1983 CONSPIRACY

A plaintiff attempting to assert a conspiracy between private and state actors in violation of § 1983 must allege: (1) an agreement between the private and public defendants to commit an illegal act; and (2) an actual deprivation of constitutional rights. *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999).

### 1. Agreement

Defendants contend that St. Michael's has not alleged that there is a conspiracy, that is, that there was a meeting of the minds or an agreement to achieve an unlawful end. (Mot. at 9.)

In order to prove conspiracy under § 1983, the plaintiff must show an agreement or a meeting of the minds to violate a constitutional right. *Hart v. Parks*, 450 F.3d 1059, 1069 (9th Cir. 2006) (quoting *United States Steelworkers of Am. V. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41(9th Cir. 1989)). A formal agreement is not necessary; an agreement may be inferred from the defendant's acts pursuant to the scheme or other circumstantial evidence. See *United States v. Clevenger*, 733 F.2d 1356, 1358 (9th Cir. 1984). A § 1983 civil conspiracy claim holds private actors liable when they conspire with state actors to violate a person's constitutional rights. *Tower v. Glover*, 467 U.S. 914, 920 (1984). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (quoting *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002)). Provided that there is an underlying constitutional deprivation, the conspiracy claim allows imputed liability; a plaintiff may be able to impose liability on one defendant for the actions of another performed in the course of the conspiracy. *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990).

Here, St. Michael's has alleged an agreement between Jack Manglona and state actor Tom Manglona to "run St. Michael's out of business." (Opp'n at 14; FAC ¶ 98.) Jack is alleged to represent Priority Care as one of its members and registered agent. (FAC ¶¶ 7, 96.) Therefore, there is a clear allegation of a meeting of the minds between Tom and Jack, and through Jack, Priority Care.

St. Michael's goes on in the FAC to allege that "[u]pon information and belief," Jack Manglona was referring to himself, Tom Manglona, Takai, and Pelisamen as the people who were going to "run St. Michael's out of business." (FAC ¶ 99.) Also, by asserting that "there are allegations that Jack Manglona acted as an agent for Priority Care (Opp'n at 14; *see also* FAC ¶ 103), St. Michael's appears to be inferring that his meeting of the minds with Tom Manglona to "run St. Michael's out of business" should be imputed to Pelisamen and Takai because they worked for Priority Care after ending their positions with St. Michael's.

However, nowhere in the FAC does St. Michael's allege that either Pelisamen or Takai entered into an express or implied agreement with Tom Manglona. St. Michael's asserts that there are sufficient concrete facts alleged to infer a conspiracy. (Opp'n at 14.) However, it stops short of indicating what these facts are or pointing the Court to the specific allegations in the FAC. At the Hearing, St. Michael's counsel admitted that there was no express agreement between Pelisamen and Takai and Tom, but contended that once Pelisamen and Takai breached their covenant not to compete, they automatically entered into the conspiracy.

A thorough reading of the FAC does not reveal any clear indication that Pelisamen or Takai had a meeting of the minds with Tom Manglona to deprive St. Michael's of its constitutional rights.

The Court is not satisfied that merely breaching their covenant not to compete, if proven, is sufficient to show a "common objective" of illegally interfering with St. Michael's business.

Accordingly, the Court finds that St. Michael's has sufficiently alleged a conspiracy between Tom Manglona and Jack Manglona/Priority Care, but not between the remaining Defendants Takai or Pelisamen. For this reason, Defendants Takai and Pelisamen's motion to dismiss the conspiracy claims is GRANTED.

### 2. Deprivation of Rights

#### a. Due Process – Interference with Business License

St. Michael's first claims that it has a clearly defined property right to its CNMI license and the right to operate its business without unwarranted and unlawful governmental interference. (Opp'n at 15.) Tom Manglona and, through the conspiracy, the Priority Care Defendants interfered with those rights. (*Id.*) Defendants contend that St. Michael's has failed to allege any facts showing that it was denied a business license or that is business license was revoked. (Reply at 2.) This is in light of St. Michael's claim in the FAC that it was at all times relevant to the complaint a fully licensed and certified ambulance company. (FAC ¶¶ 3, 12–13.)

"[T]he revocation or removal of a license or certificate that is essential in the pursuit of a livelihood requires procedural due process under the Fourteenth Amendment." *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1150 (10th Cir. 2001). St. Michael's alleges that Tom Manglona's actions were designed to deny St. Michael's the ability to conduct its rightfully licensed business and interfere with St. Michael's ability to provide services to its clients. (Opp'n at 15–16; FAC 33–90, 141, 148.)

Indeed, St. Michael's does not allege that its business license was ever revoked. It does, however, claim that Defendants conspired to run St. Michael's out of business. (Opp'n at 14–15.) Interference with business operations can be a due process violation under § 1983. In the Ninth Circuit case *A & A Concrete, Inc. v. White Mountain Apache Tribe*, plaintiffs alleged that the sheriff conspired with private parties to put the plaintiffs (a cement company) out of business by serving summonses, complaints, and garnishments that the defendants knew to be invalid. 676 F.2d 1330, 1332-33 (9th Cir. 1982). The Ninth Circuit deemed this to be valid claim under § 1983. *Id.* In the Eleventh Circuit case *Espanola Way Corp. v. Meyerson*, the court found that plaintiff had a due process cause of action under § 1983 where the plaintiff alleged issuance of "344 building code violations . . . as well as numerous fire violations," all of which were unfounded and issued "to harass and drive [the plaintiff's h]otel out of business." 690 F.2d 827, 828 (11th Cir. 1982).

In both of the above cases, there was no requirement that the plaintiffs were *actually* driven out of business. Further, defendants in those cases did not interfere with plaintiffs' business licenses, but rather the operation of their businesses. Similarly, St. Michael's has claimed that Defendants have taken action to run St. Michael's out of business. There are allegations that Defendant Tom Manglona interfered with St. Michael's PTAN by drafting a letter that was eventually sent to Palmetto GBA (the Medicare contractor responsible for paying St. Michael's claims; hereafter, "Palmetto") informing Palmetto that St. Michael's was "not licensed or certified in the CNMI" as an ambulance service. (FAC ¶ 67.) This resulted in the revocation of St. Michael's PTAN. (FAC ¶ 66.) Further, St. Michael's alleges that Defendants interfered with St. Michael's vehicle registration. (FAC ¶¶ 33-51, 82, 124, 128.) These actions, if proven, obstruct St. Michael's ability to conduct business.

Accordingly, St. Michael's has sufficiently alleged a § 1983 claim for governmental interference with its business operations.

### b. Due Process – Provider Transaction Access Number (PTAN)

Next, St. Michael's argues that it had a clearly defined property right to its PTAN, and that Defendants interfered with that right. (Opp'n at 16.)

St. Michael's was issued a PTAN by Medicare and received payment from Palmetto. (FAC ¶¶ 28, 65.) In November 2010, after performing an investigation that was prompted by a letter that Tom allegedly drafted and later receiving information from Tom that "St. Michael's was not licensed in the CNMI," Palmetto revoked St. Michael's PTAN. (FAC ¶¶ 65–69.)

St. Michael's alleges that Tom Manglona's false information to Palmetto that St. Michael's lacked proper certification and licenses violated St. Michael's due process rights. (FAC 68–69.) St. Michael's further alleges that Tom Manglona secretly complained to Palmetto knowing that St. Michael's would likely lose its PTAN number. (Opp'n at 17.) The loss of St. Michael's PTAN number was "caused" by Tom's wrongful acts, thus making him and other Defendants liable. (*Id.*)

Defendants argue that any interference was caused by the letter from Commissioner Tudela that was sent to Palmetto and not by Tom Manglona himself. (Reply at 3.) This argument is tenuous at best because the FAC clearly states that Palmetto's investigator, Norm Seigel, spoke on the phone with a CNMI official believed to be Tom Manglona, who informed him that St. Michael's was not licensed in the CNMI. (FAC ¶¶ 65–69.) Thus, even without the letter, there are allegations of direct interference with St. Michael's PTAN eligibility by Tom Manglona.

//

/

### C. "CLASS OF ONE" EQUAL PROTECTION

Finally, St. Michael's claims that it had a clearly defined property right to its CNMI license and Tom Manglona interfered with that right while simultaneously favoring other ambulance companies in violation of St. Michael's right to equal protection of the laws. (Opp'n at 17.)

To succeed on a "class of one" claim, St. Michael's must demonstrate that the Defendants (1) intentionally (2) treated St. Michael's differently than other similarly situated property owners, (3) without a rational basis. *See Gerhard v. Lake Cnty.*, 637 F.3d 1013, 1022 (9th Cir. 2011).

Here, St. Michael's has alleged in the FAC that Tom Manglona intentionally treated Priority Care differently than St. Michael's in terms of interfering with its ambulance registration and business licensing. (Opp'n at 18; FAC 173–177.)

Defendants argue that there could not have been preferential treatment because at the time Tom Manglona communicated to Plaintiff regarding ambulance registration and "star of life" decals, Priority Care had not come into existence. (Reply at 3.) Further, Defendants point out in St. Michael's FAC that St. Michael's vehicles, as well as DPS's Fire Division, and Priority Care's vehicles were registered as `vans` and thus there was no preferential treatment. (Reply at 3.) While this is true (*see* FAC ¶¶ 43, 89, 126), Defendants have not pointed to any case law to show that the treatment of the different entities must be simultaneous. The alleged interference of St. Michael's vehicle registration occurred in 2009 (*see* FAC ¶ 42–45), and Priority Care was not established until March, 2010 (FAC ¶ 100).[3] However, Priority Care was established one month before the St. Michael's received notice that it was under investigation by Palmetto and several months before St.

---

[3] Jack first established Saint Jude Supplies and Services, LLC, in 2010, which later became Priority Care. (FAC ¶¶ 101.)

Michael's PTAN was revoked. (FAC ¶¶ 65, 66, 100.) Both companies are similarly situated in that they are both private companies, offering non-emergency medical transport services and use ambulances with blue lights. St. Michael's alleges that it was treated differently from Priority Care in that Defendants interfered with St. Michael's, but not Priority Care's, vehicle registration and Medicare account eligibility. Accordingly, St. Michael's has alleged sufficient facts for the "class of one" equal protection claim.

### D. SUBJECT MATTER JURISDICTION

Defendants contend that upon dismissal of the 1983 conspiracy allegation, the Court should dismiss the case for lack of subject matter jurisdiction. (Mot. at 10.) Here, since the 1983 conspiracy allegation survives at least against Tom and Jack Manglona, the Court will retain supplemental jurisdiction as to the remaining claims pursuant to 28 U.S.C. § 1367. However, since St. Michael's has failed to allege a sufficient nexus to tie Pelisamen and Takai to the conspiracy and therefore the federal claims, the Court will dismiss Pelisamen and Takai from those claims and decline to exercise supplemental jurisdiction over the remaining state law claims against them.

### VI. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the First Amended Complaint with respect to Defendants Tom Manglona, Jack Manglona, and Priority Care is DENIED, and with respect to Defendants Pelisamen and Takai is GRANTED for the second, fourth, sixth, eighth, ninth, and eleventh causes of action. Defendants Pelisamen and Takai are dismissed without prejudice.

IT IS SO ORDERED this 21st day of November, 2012.

RAMONA V. MANGLONA, Chief Judge

12